UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**65 Cadillac Square JPMC 2006-CIBC14 REO, LLC,** an Ohio limited liability company    Case No: 2:09-cv-13299-RHC-VMM

Plaintiff,

vs.    Hon: Robert H. Cleland

**DTWR, LLC**, et al.

Defendants

---

| MILLER, CANFIELD, PADDOCK AND STONE, PLC<br>James L. Allen (P28182)<br>Eric C. Bartley (P69792)<br>840 West Long Lake Road, Suite 200<br>Troy, Michigan 48098<br>Attorneys for Plaintiff<br>(248) 267-3285 | SCHAFER AND WEINER, PLLC<br>Joseph K. Grekin (P52165)<br>40950 Woodward Ave., Ste. 100<br>Bloomfield Hills, MI  48304<br>Attorney for Defendant<br>(248) 540-3340 |

---

## STIPULATED ORDER APPOINTING INDEPENDENT FINANCIAL MONITOR

### Recitals And Definitions:

A.    Plaintiff, 65 Cadillac Square JPMC2006-CIBC14 REO, LLC, an Ohio limited liability company, ("Plaintiff") is the holder of that certain commercial mortgage loan dated as of July 25, 2005 in the original principal amount of $17,500,000 (the "Loan") extended to Defendant DTWR, LLC, a Michigan limited liability company ("Defendant").

B.    Defendant has defaulted in the terms of the Loan Documents as defined in Plaintiff's Complaint by, among other defaults, failing to make required monthly payments from February 1, 2009 to the present.

C.    Defendant DTWR, LLC, a Michigan limited liability company ("Defendant") granted Plaintiff a certain mortgage (the "Mortgage") as more fully set forth in Plaintiff's Complaint.

D.      The Mortgage granted to Plaintiff a mortgage lien against certain real property (the "Real Estate") located in the City of Detroit, Wayne County, Michigan, being more particularly described in **Exhibit A**, attached. Plaintiff has further been granted a security interest in Collateral.  Defendant operates a 40-story, 346,990 square foot, office building on the Real Estate (the "Project").

E.      Plaintiff filed its Complaint seeking, among other relief, foreclosure of its mortgage, recovery under the guaranty, and appointment of a receiver.

F.      The term "Collateral" means all personal property, tangible or intangible, used or useable in connection with the Real Estate, including without limitation, all collateral and personal property described in the Mortgage and other loan documents, and all cash on hand, bank accounts, credit card receipts, bank deposits, security deposits and other cash collateral.

G.      The term "Income" means, collectively, all cash, cash on hand, checks, cash equivalents, credit card receipts, demand deposit accounts, bank accounts, cash management or other financial accounts, bank or other deposits, and all other cash collateral (all whether now existing or later arising); current and past-due earnings, revenues, rent, CAM charges, issues and profits, accounts, and accounts receivable (all whether unpaid, accrued, due, or to become due); all claims to rent, CAM charges, issues, profits, income, cash collateral, and all other gross income derived with respect to the Project or business operations at the Project, regardless of whether earned

before or after entry of this Order.  "Income" includes all Income received after the first uncured Event of Default under the Mortgage that was not either (a) paid to the Plaintiff or (b) used for ordinary and necessary business expense, regardless of whether the Income was received on or after the filing of the Statutory Notice of Default.

       H.     The parties agree that an independent financial monitor should be appointed to oversee and control the operations and direct the management of the Project all as provided in this Order.

       Pursuant to the stipulation of the parties as evidenced by the signatures of their respective counsel to this Order, and the Court being otherwise fully advised in the premises,

       IT IS ORDERED:

9.      **Appointment of Independent Financial Monitor.**

9.1     Michael Kalil ("Financial Monitor"), whose address is 28400 Northwestern Highway, 4th Floor, Southfield, MI 48034 is appointed independent financial monitor of the Project, Real Estate and Collateral.  The Financial Monitor's duty to act as independent financial monitor is subject to the Financial Monitor's written acceptance and approval of the terms of this Order.  This Order is effective upon entry (the "Effective Date").

9.2     As of the Effective Date, the Financial Monitor is authorized to direct and take immediate and full control of the financial operations of the Project and to take such other actions as the Financial Monitor deems reasonable and appropriate to exercise full control over, preserve, manage, secure and safeguard the Project, Real Estate, Collateral, and Income. Defendants shall have neither possession nor control of Income (as defined above) derived from, the Project, Real Estate, or Collateral.

9.3     Within 7 days of the Effective Date, the Defendant shall deliver to Financial Monitor any money on deposit in all depositories, banks, brokerages, and otherwise (collectively, "Financial Institutions") belonging to or arising from the operation of the Project, Real Estate, or Collateral from the date of the first Event of Default, which occurred on February 1, 2009, to the present, whether such funds be in accounts titled in the name of the entity or not (but excluding any monies paid to, or held by, Plaintiff).  Defendant shall additionally deliver to the Financial Monitor all Income it receives subsequent to the Effective Date within 7 days of receipt.

4

9.4     The Financial Monitor shall deposit monies and funds collected and received in connection with the Project, Real Estate and Collateral in an account in the name of the Financial Monitor in its court appointed capacity at federally insured banking institutions or savings associations with offices in this State, which are not parties to this case.

9.5     The Defendant, its property manager, all of their respective employees, and Plaintiff are ordered to cooperate with the Financial Monitor in the transition of the financial operations oversight and management of the Project, Real Estate and Collateral to the Financial Monitor and its designees as provided in this order and on the Effective Date, or as soon thereafter as practicable but in any event within a reasonable time, turn over to the Financial Monitor all of the following pertaining to the Project, Real Estate and Collateral (but only to the extent that such items are in their possession, custody, or control):

(a)     All keys.

(b)     All leases including all communication/correspondence files.

(c)     Documents pertaining to all pending new leases/renewals.

(d)     A current rent-roll.

(e)     Tenant contact names and telephone numbers.

(f)     The occupant ledgers.

(g)     All security deposits, security deposit accounts, and an accounting for all security deposits.

(h)     The petty cash fund, if any.

(i)     A current aged account receivable/delinquency report.

(j)     An aged listing of all trade payables and other payables.

(k)     A list of historical common area maintenance charges and operating expenses for the Project.

(l)     A list of utilities and utility accounts.

(m)     Year-end 2008 operating statements and year-to-date 2009 operating statements, which Defendant shall also provide Plaintiff.

(n)     All on-site employee payroll records and employee files and applications.

(o)     An inventory of all equipment, furniture, vehicles and supplies.

(p)     All existing service contracts.

(q)     All pending bids for contractor work.

(r)     All insurance policies on the Project and their terms.

(s)     All tenant and vendor insurance certificates and loss runs.

(t)     Information regarding all insurance claims submitted in the past three (3) years.

(u)     Surveys, site plans, specifications, floor plans, drawings, measurements, etc.

(v)     Documents identifying and summarizing all pending litigation (excluding this action).

(w)     All documents, books, records and computer files, computer equipment, software, management files, equipment, furniture, supplies, and all passwords needed to access all software, computer files, and e-mail accounts maintained at the on-site management office(s) (and all off-site financial records), including the office located at the Project, concerning the Income, and the operation and management of the Project.  This provision shall in no way require Defendants to turn over any such items that would violate the attorney-client privilege or the work-product doctrine, but Defendants shall turn over to Plaintiff and the Financial Monitor a privilege log identifying all items so withheld in accordance with FRCP 26(b)(5).

(x)     Such other records pertaining to the management of the Project, Real Estate, or Collateral as may be reasonably requested by the Financial Monitor.

9.6     The Defendant shall prepare and submit to the Plaintiff and the Financial Monitor an accounting for all Income and security deposits received since the first uncured Event of Default (as defined in the Note and Mortgage), which occurred on February 1, 2009.  This accounting shall be delivered no later than 30 days after the Effective Date.

9.7     The Defendant, its employees, and Plaintiff are prohibited from removing any personal property belonging to Defendant from the premises, or diverting any Income.

**10.     Financial Monitor's Duties and Authority.**

10.1    The Financial Monitor shall be vested with and shall discharge the following authority, powers and duties:

(a)     To assume control over the financial operations of the Project, Real Estate and Collateral, to collect and receive all Income, and to approve or disapprove of any and all expenditures of Income in accordance with the Budget (defined below).

(b)     To prepare and maintain complete books, records, and financial reports of the Project, Real Estate and Collateral, including, but not limited to, operating statements, income statements, balance statements, and all other statements prepared for the Project, Real Estate and Collateral in a form acceptable to Plaintiff.

(c)     To assess and recommend a property manager to operate the Project, however any such property manager and any related management agreement shall be subject to Parties' Approval or Court Approval.

(d)     To allow Plaintiff, Defendant, their counsel and appraisers and other independent third party consultants engaged by Plaintiff or Defendant, at their own expense, access to the Project, Real Estate and Collateral at all reasonable times to inspect the Project, Real Estate and Collateral and all books and records, and to cooperate with Plaintiff, Defendant, their

7

counsel, appraisers, and other independent third-party consultants to evaluate the Project.

(e)     To maintain a separate account with a federally insured banking institution or savings association with offices in this State in the Financial Monitor's own name, as Financial Monitor, from which the Financial Monitor shall disburse all authorized payments as provided in this Order.

(f)     To determine and report to the Court and Plaintiff whether any Income previously received by Defendant from January 1, 2007 to the present has been used for purposes other than for the maintenance, management, and expenses of the Project as the Financial Monitor deems necessary.

## 11.     Extent of Financial Monitor's Authority.

11.1     Without limiting or expanding the foregoing, the Financial Monitor is authorized to exercise all powers and authority that may be incidental to the powers described in this Order or reasonably necessary to accomplish the purpose of this Order.  The Financial Monitor shall have such additional powers that are provided by law, if any, and that the Court may from time to time direct or confer.

11.2     The Financial Monitor shall, during the pendency of this action, have the right to apply to this Court for further instructions or directions.

11.3     The authority granted to the Financial Monitor is self-executing, unless the action requires Approval.

12.    **Financial Monitor's Compensation, Reports, Accounting, and Bond.**

    12.1    The Financial Monitor's compensation shall be as follows:

        (a)    A monthly Financial Monitor fee equal to $5,000.

        (b)    The Financial Monitor's fees shall be prorated for any partial month.

        (c)    The Financial Monitor's general office administration, accounting and overhead shall not be charged against the Income.

    12.2    The Financial Monitor's compensation shall be paid (1) first from the Income from the Project, Real Estate or Collateral and (2) next, by the Plaintiff, but only to the extent that the Income is insufficient to pay the Financial Monitor's compensation, and only in Plaintiff's sole and absolute discretion.

    12.3    Nothing in this Order shall require the Financial Monitor to advance funds other than from Income without a bond or security for payment satisfactory to the Financial Monitor.

    12.4    Within 30 days after the Effective Date the Financial Monitor shall submit to the Court, for the Court's *in camera* inspection, a list of all of the personal property, whether tangible or intangible, present at the Project.

    12.5    By the 20th day of each calendar month, the Financial Monitor shall prepare a financial report (including, without limitation, an income and expense statement, a balance sheet and a cash flow analysis) pertaining to the operations of the Project, Real Estate, or Collateral during the immediately preceding month (the "Operating Reports").

12.6     The Financial Monitor shall further prepare a proposed operating budget and capital budget for 2009 for the Project (the "Budget") within 30 days of the Effective Date, and thereafter each December 1 for the succeeding year (together with the Operating Reports, the "Financial Monitor's Reports").  The Budget shall include a monthly payment to Plaintiff in the amount of $30,000 to be paid after all operating expenses in the Approved Budget or the net operating income, whichever is greater.

12.7     The Budget will be reviewed by the parties and be subject to Parties' Approval or Court Approval.  The Budget, as approved, shall be the "Approved Budget."

12.8     The Financial Monitor shall submit the Financial Monitor's Reports to the Court, for the Court's *in camera* inspection.  The Financial Monitor's Reports are not to be filed with the Clerk at the Court and shall not be available for public inspection without a specific order of the Court.

12.9     The Financial Monitor shall furnish to the parties' counsel any additional information regarding the Project, Real Estate, or Collateral as required by law and as may be reasonably requested by them, but the Financial Monitor is authorized to request instructions from this Court should any party request information or documents that would be unduly burdensome or expensive to produce, or to annoy or harass, or for any other improper purpose.

12.10   The Financial Monitor shall furnish the Financial Monitor's

Reports to the following:

>   Eric C. Bartley
>   Miller, Canfield, Paddock and Stone, P.L.C.
>   840 W. Long Lake Road, Suite 200
>   Troy, MI  48098-6358
>
>   Josh Azinger
>   Midland Loan Services, Inc.
>   10851 Mastin, Suite 700
>   Overland Park, KS 66210
>
>   Joseph K. Grekin
>   Schafer & Wener PLLC
>   40950 Woodward Ave., Suite 100
>   Bloomfield Hills, MI 48304
>
>   All other counsel of record.

12.11   The Financial Monitor shall post a surety bond from an

insurance company licensed to do business in this State in an amount not less

than $550,000.

11

13.     **Confidentiality.**

13.1    "Confidential Information" means the Financial Monitor's Reports and any other nonpublic information.

13.2    The parties to this action, their counsel, and all those in active concert or participation with them, who receive actual notice of this Order, or otherwise, shall keep all Confidential Information provided by the Financial Monitor confidential, and all such persons are prohibited from disclosing any Confidential Information to anyone other than the parties to this action and their counsel without specific order of this Court, except that (1) Plaintiff, Defendant, and their attorneys and agents may provide potential purchasers, consultants, and any other appropriate persons with information useful for the marketing, leasing, selling, or management of the Project, Real Estate, or Collateral, provided, however, that all such information shall be subject to Parties or Court Approval and (2) Plaintiff and its attorneys and agents may provide Plaintiff's assignor and its master servicer, special servicer, any subservicer, trustee, and any trust certificate holder with any information required in the normal course of business of real estate mortgage investment conduit trusts.

**14.**    **Approval.**

14.1    "Plaintiff's Approval" means written consent either directly by Plaintiff or by Plaintiff's counsel.  "Parties Approval" means written consent either directly by Plaintiff and Defendant or their respective counsel.  "Court Approval" means approval by a specific Order of the Court. "Approval" when appearing without a modifier means <u>either</u> Plaintiff's Approval <u>or</u> Court Approval.

**15.**    **Term and Final Accounting.**

15.1    The powers provided to the Financial Monitor pursuant to this Order shall continue until further order of the Court.

15.2    The Financial Monitor can be removed either (1) automatically thirty days after the filing of a written demand for removal signed by Plaintiff's and Defendant's counsel and filed with the Court; or (2) in the Court's equitable discretion upon a motion for cause.  If the Financial Monitor is removed, a successor financial monitor can be appointed by a stipulated order on behalf of Plaintiff and Defendant.  If Plaintiff and Defendant cannot agree on a successor financial monitor, the Court will name a successor financial monitor by further order after a motion is filed by Plaintiff or Defendant requesting the appointment of a successor financial monitor.

15.3    Immediately upon termination of this Order, provided no successor financial manager is appointed, the Financial Manager shall turn over all of the Income, Collateral, documents and other items or material obtained by virtue of this Order as ordered by the Court.

15.4    Neither the termination of this Order nor the Financial Monitor's removal will discharge the Financial Monitor or the Financial Monitor's bond.

15.5    The Financial Monitor shall submit a final accounting (with copies to the recipients of Financial Monitor's Reports as identified above) for approval by the Court within thirty days after the termination of the Order or the Financial Monitor's removal.

15.6    Only after the Court approves the Financial Monitor's final accounting may the Financial Monitor be discharged and the Financial Monitor's bond be cancelled.

**16.    General Provisions.**

16.1    No person or entity shall file suit against the Financial Monitor, or take other action against the Financial Monitor, without an order of this Court permitting the suit or action; provided, however, that no prior court order is required to file a motion in this action to enforce the provisions of this Order or any other order of this Court in this action.

16.2    The Financial Monitor and its employees, agents, and attorneys shall have no personal liability in connection with any liabilities, obligations, liens, or amounts owed to any of Defendant's creditors because of its duties as Financial Monitor.  Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with Michigan law.

14

16.3    The Financial Monitor and its employees, agents, and attorneys shall have no personal liability and they shall have no claim asserted against them relating to the Financial Monitor's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts, or the failure to comply with this Court's orders.

16.4    Defendants, all property managers, and all those in active participation or concert with them who receive notice of this Order, all those having claims against the Project, Real Estate, Income, or Collateral who receive notice of this Order, and Plaintiff are enjoined from, and shall not:

> (a)    **Commit Waste.**  Commit or permit any waste on all or any part of the Project, Real Estate, or Collateral, or suffer or commit or permit any act on all or any part of the Project, Real Estate, or Collateral in violation of law, or remove, transfer, encumber, or otherwise dispose of any of the Project, Real Estate or Collateral.

> (b)    **Collect Income.**  Demand, collect, receive, discount, or in any other way divert or use any of the Income.

> (c)    **Terminate any Utility Service.**  Terminate or withhold any electric, gas, water, sewer, telephone, or other utility service supplying the Project, Real Estate, or Collateral, require any utility deposit, or otherwise interfere with the continued operations of the Project, Real Estate, or Collateral.

> (d)    **Interfere with the Financial Monitor.**  Directly or indirectly interfere in any manner with the discharge of the Financial Monitor's duties under this Order or the Financial Monitor's operation or management of the Project, Real Estate, or Collateral.

> (e)    **Transfer or Encumber the Project, Real Estate, or Collateral.**  Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal, or in any manner whatsoever deal in or dispose of the whole or any part of the Project, Real Estate, or Collateral including, but not limited to, the Income, without prior court order.

      (f)     **Impair the Preservation of the Project, Real Estate, or Collateral.** Do any act that will, or that will tend to, impair, defeat, divert, prevent, or prejudice the preservation of the Project, Real Estate, or Collateral, including the Income, or the preservation of Plaintiff's interest in the Project, Real Estate, or Collateral, and the Income.

Nothing in this Section, however, shall in any way prohibit, limit, restrict, impair, or inhibit Plaintiff's right and ability to pursue all of its claims pending in this action or otherwise provided under the Loan Documents, at law, or in equity.

16.5    The Financial Monitor shall faithfully perform and discharge the Financial Monitor's duties and obey the Court's orders.

16.6    The Financial Monitor is subject to the personal jurisdiction of the Court.

16.7    The Financial Monitor's duty to act as Financial Monitor is subject to the Financial Monitor's written acceptance and approval of the terms of this Order.  Upon acceptance, the Financial Monitor shall be bound by each and every term contained in this Order and each and every obligation of the Financial Monitor imposed by this Order.

17.    **Amendment of Order.**

17.1    This Order may be amended for cause after a motion or hearing.  This Order may also be amended by order agreed to by Plaintiff, Defendant, and the Financial Monitor.

18.    **No Prejudice to Foreclosure/Final Order.**

18.1    This Order shall not prejudice Plaintiff's foreclosure of the Mortgage, either judicially or by advertisement, or an action by Plaintiff under any security agreement or the Uniform Commercial Code with respect to the Collateral, or any of Plaintiff's other claims as set forth in any amendments to the Complaint.

18.2    Pursuant to Fed. R. Civ. P. 54(b), the Court expressly determines there is no just reason for delay.  Accordingly, this is a final order.


 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE


Dated:  October 19, 2009


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 19, 2009, by electronic and/or ordinary mail.


 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

The undersigned stipulate to the entry of this Order:

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By:     /s/ Eric C. Bartley

        Eric C. Bartley (P69792)

        James L. Allen (P28182)

        Attorneys for Plaintiff

        Miller, Canfield, Paddock and Stone, P.L.C.

        840 West Long Lake Road, Suite 200

        Troy, MI 48098-6358

        bartley@millercanfield.com


By:     /s/ Joseph K. Grekin

        Joseph K. Grekin (P52165)

        Attorney for Defendants

        Schafer and Weiner, PLLC

        40950 Woodward Ave., Ste. 100

        Bloomfield Hills, MI  48304

        jgrekin@schaferandweiner.com

Acceptance of Financial Monitor

Michael Kalil accepts the duties of the Financial Monitor as set forth in this Order and agrees to submit to the personal jurisdiction of the Court.


By: /s/ Michael Kalil_____
       Michael Kalil

Dated: October 16, 2009

# EXHIBIT A

EXHIBIT A

Legal Description of Real Estate

Real estate located in the City of Detroit, Wayne County, Michigan, described more particularly as:

> Lot 41 and the Easterly 41 feet of Lot 42, Plat of Section 6, Governor and Judge's Plan of the City of Detroit, as recorded in Liber 34 of Deeds, Page 545, Wayne County Records.

Commonly known as: 65 Cadillac Square, Detroit, Michigan 48226

Tax Parcel Number(s):     000226-31 Ward 1

6991025.6\131318-00058
10/16/09 4:40 PM